IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br><br><br>vs.<br><br>JEFFERY ALLEN CHRISTENSEN,<br><br>Defendant. | **MEMORANDUM DECISION<br>AND ORDER<br>DENYING MOTION TO SUPPRESS**<br><br><br><br>Case No. 2:09-CR-187<br>Judge Dee Benson |

This matter is before the court on defendant's motion to suppress. (Dkt. No. 18.) On February 9, 2010, the court conducted an evidentiary hearing on the motion. Defendant, Jeffery Allen Christensen, was present with his counsel, Rebecca Hyde Skordas. The government was represented by J. Drew Yeates. Following the hearing, the court ordered a transcript and set a briefing schedule. After thorough review and consideration of the memoranda submitted by the parties and the testimony presented at the evidentiary hearing, the court enters the following memorandum decision and order.

1

## BACKGROUND

The court finds the relevant facts as follows.[1]  Officer Aaron Lavin has been a police officer for over six years and has served as a police officer with the City of Taylorsville Police Department for the past two years.  (Tr. at 5-6.)  Shortly after midnight on February 20, 2009, while conducting routine patrol, Officer Lavin drove past a suspected drug house.  Officer Lavin was familiar with the residence as there had been multiple neighbor complaints and several drug-related arrests at the residence during the weeks prior to February 20.  (Tr. at 7, 40.)  In light of these arrests, Officer Lavin had been instructed to watch the residence for short-stay traffic.  (Tr. at 8.)

Officer Lavin was driving a marked patrol car at the time.  Because of this, he did not stop in front of the residence, but rather continued driving at a rate of approximately fifteen to twenty miles per hour so as not to attract the attention of anyone in the residence.  (Tr. at 8-9.)  As he drove past, Officer Lavin observed a white truck parked in front of the residence.  (Tr. at 9.)  At 12:13 a.m., as he passed the residence and the truck, Officer Lavin looked at the truck's license plate and typed plate number 353WMW into his computer.  Officer Lavin mistakenly believed that 353WMW was the correct number on the plate; however, the actual number on the plate was 353WNW.  (Tr. at 9, 13, 14.)

Officer Lavin continued traveling down the street to a location south of the residence.  (Tr. at 9.)  While at that location, Officer Lavin received the results of his computer inquiries.  (Id.)  The computer database returned the following description for the vehicle bearing license

---

[1]Reference to the transcript of the evidentiary hearing conducted on February 9, 2010, will be cited as "Tr. at __."

plate number 353WMW:

**VEHICLE INFORMATION**

| | |
|---:|:---|
| VIN: | 1GKFK16R2VJ710328 |
| YEAR/MAKE/MODEL: | 1997 GMC K1500 SUBURBAN |
| TYPE: | TRUCK |
| COLOR: | WHITE |
| BODY TYPE: | 4 DOOR WAGON |
| FUEL TYPE: | GASOLINE |
| CYLINDERS: | 8 |

(Def.'s Ex. A.)[2]  Additionally, the computer check revealed that the vehicle bearing license plate 353WMW had no valid insurance.  (Tr. at 10.)

From his location down the street, Officer Lavin thought the "Vehicle Description" for license plate 353WMW appeared consistent with the vehicle he observed as he drove past the residence.  (Tr. at 10.)  In fact, however, the truck parked in front of the residence, license plate 353WNW, was actually a validly insured 1997 white Chevrolet truck, club cab pickup.  (Def.'s Ex. B.)

After reading the computer report indicating "no valid insurance," Officer Lavin observed the white truck drive away from the residence.  (Tr. at 10.)  Officer Lavin caught up with the truck and initiated a traffic stop based on his mistaken belief that the white truck was uninsured.  (Tr. at 11.)  As the white truck was pulling over, in accord with his common practice, Officer Lavin called dispatch to provide the license plate number of the vehicle he was stopping and to provide his location.  (Tr. at 12.)  While driving behind the white truck, Officer Lavin

---

[2]Defense Exhibit A is a computer print out, and does not appear exactly as it did on Officer Levin's computer.  (Tr. at 33.)

read the license plate number to dispatch, identifying it correctly this time as "353 Whiskey

November Whiskey." (Tr. at 11-12.) Officer Lavin called the license plate into dispatch at

12:21 a.m. – eight minutes after he had originally typed the license plate into his computer.

Officer Lavin did not realize that the license plate number he recited to dispatch – 353WNW –

was different from the license plate number he had previously searched on his computer –

353WMW. (Tr. at 15.)    Officer Lavin approached the vehicle and asked the driver,

defendant Jeffery Allen Christensen, for a driver's license, vehicle registration and proof of

insurance for the vehicle. (Tr. at 16.) Mr. Christensen was unable to provide either proof of

registration or proof of insurance, both in violation of Utah law. (Tr. at 16, 18-19.) Mr.

Christensen stated that the truck belonged to his father and he did not know where his father kept

that information. (Tr. at 16.)

  For the remainder of the stop, the subsequent search, and the arrest of Mr. Christensen,

Officer Lavin continued to believe that the white truck was uninsured. (Tr. at 15.)[3] It was not

until Mr. Christensen was booked into jail and while Officer Lavin was writing his report that he

realized that he had typed in an incorrect license plate number when entering his computer

search and that the white truck driven by Mr. Christensen was actually insured. (Tr. at 15.)

  As a result of these events, on April 1, 2009, Mr. Christensen was charged in a three-

count indictment with Felon in Possession of a Firearm and Ammunition, 18 U.S.C. § 922(g)(1);

Possession of Methamphetamine, 21 U.S.C. § 844(a); and Possession of Marijuana, 21 U.S.C. §

844(a). Thereafter, Mr. Christensen filed a Motion to Suppress, claiming that the evidence

---

[3]Because defendant challenges only the lawfulness of the stop, the court need not make
additional factual findings concerning the subsequent detention and search of the vehicle. (Def.'s
Mem. In Support of Mot to Suppress at 1, 5.)

seized from his person and/or the vehicle he was driving was obtained "in violation of [his] rights under the Fourth Amendment to the United States Constitution." (Def.'s Mot. to Suppress. at 1.) More specifically, Mr. Christensen claims that given the "Vehicle Information" provided on the computer, Officer Lavin should have realized that the computer results indicating "no valid insurance" were for a different vehicle. In other words, Mr Christensen claims that it was not reasonable for Officer Lavin to initiate a traffic stop on the Cheverolet pickup truck he was driving based upon a computer report indicating that a GMC Suburban was uninsured. (Id. at 7.) Mr. Christensen further asserts that because the initial stop of the vehicle violated the Fourth Amendment, all evidence seized as a result of the unlawful stop should be suppressed. (Id. at 1, 10.)

## **DISCUSSION**

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures by government actors. See U.S. Const. amend. IV; United States v. Sanchez, 89 F.3d 715, 717 (10th Cir. 1996). "[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable." Wilson v. Arkansas, 514 U.S. 927, 931 (1995). It is well established that a routine traffic stop is a seizure within the meaning of the Fourth Amendment. United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir. 1995), cert. denied, 518 U.S. 1007 (1996). The reasonableness of such a stop is reviewed under a two-part test set forth in Terry v. Ohio, 392 U.S. 1, 20 (1968). Under that test, the court must make a dual inquiry asking first whether the officer's action was justified at its inception and second whether it was reasonably related in scope to the circumstances which justified the interference in the first place. Id.; United States v. Williams, 271 F.3d 1262, 1266 (10th Cir. 2001), cert.

denied, 535 U.S. 1019 (2002).

The court's focus in this case is limited to the first inquiry as Mr. Christensen's motion to suppress challenges only the initial stop of his vehicle. (Def.'s Mem. In Support at 1, 5, 10.) A traffic stop is valid or "justified at its inception" if the stop is "based on an observed traffic violation or if the police officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." United States v. Botero-Ospina, 71 F.3d 783, 787-88 (10th Cir. 1995) (en banc), cert. denied, 518 U.S. 1007 (1996). "[The] sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated 'any one of the multitude of applicable traffic and equipment regulations' of the jurisdiction." Id. (quoting Delaware v. Prouse, 440 U.S. 648, 661 (1979)).

In this context, the United States Court of Appeals for the Tenth Circuit has explicitly stated that the proper issue is "whether [the officer] had *reasonable suspicion* of a violation, not whether there was *actually* a violation." United States v. Tibbetts, 396 F.3d 1132, 1137 (10th Cir. 2005) (emphasis added.); see United States v. Vercher, 358 F.3d 1257, 1263 (10th Cir. 2004) ("That the facts may not support a conclusion that [defendant] *actually violated* the law is irrelevant."). Accordingly, the Tenth Circuit has consistently held that "an officer's mistake of fact may support the . . . reasonable suspicion necessary to justify a traffic stop," and "[a] traffic stop based on an officer's incorrect but reasonable assessment of the facts does not violate the Fourth Amendment," Tibbetts, 396 F.3d at 1137; see United States v. DeGasso, 369 F.3d 1139, 1144 (10th Cir. 2004); United States v. Vercher, 358 F.3d 1257, 1261 (10th Cir. 2004) ("[R]easonable suspicion may be supported by an 'objectively reasonable' good faith belief even if premised on factual error."); see also United States v. Salinas-Cano, 959 F.2d 861, 865 (10th

Cir. 1992).  As the United States Supreme Court has explained, "to satisfy the reasonableness

requirement of the Fourth Amendment, what is generally demanded" of the police officer

conducting a warrantless search or seizure "is not that they always be correct, but that they

always be reasonable."  <u>Illinois v. Rodriguez</u>, 497 U.S. 177 (1990).

Applying these principles, the court concludes that Officer Lavin's factual mistake[4] was

objectively reasonable given the totality of the circumstances in this case.  As set forth above,

Officer Lavin was attempting to observe a known drug house, a vehicle parked in front of the

house, and the vehicle's license plate, all while driving at a rate of fifteen to twenty miles per

hour, late at night.  It was under these conditions that Officer Lavin mistakenly typed an "N"

instead of an "M" while entering the license plate query.  Then, after receiving the computer

results, Officer Lavin erroneously concluded that the computer-generated vehicle description

was consistent with the white truck parked in front of the residence.

While a more detailed and lengthy review of the vehicle description would have yielded

additional information that might have alerted Officer Lavin to the fact that the insurance

information was for a different vehicle, the description nonetheless included the critical and

obvious terms "1997," "white," "truck" – terms that were entirely consistent with the vehicle he

observed.  Given the conditions under which Officer Lavin was working, the relatively rapid

pace in which the situation unfolded, and the remarkably similar license plate numbers and

vehicle descriptions, the court finds that Officer Lavin's mistake was objectively reasonable.

---

[4]Under Utah law it is unlawful to operate an uninsured motor vehicle.  Utah Code Ann. §
41-12a-301(2).  Because Officer Lavin clearly understood the law and believed he was stopping
an uninsured motor vehicle, he did not make a mistake of law.  <u>See</u> <u>United States v. DeGasso</u>, 369
F.3d 1139, 1144 (10th Cir. 2004) (providing that failure to understand the law by the very person
charged with enforcing it is *not* objectively reasonable).

Similarly, although defendant claims that Officer Lavin should have ultimately realized his mistake while following defendant's truck which was clearly marked "Cheverolet" rather than "GMC," the facts indicate that while following defendant, Officer Lavin was not focused on the vehicle but was once again focused on the license plate number. As explained above, while driving behind the defendant, initiating the traffic stop, Officer Lavin called dispatch to provide the license plate number of the vehicle and to provide his location. Moreover, based on Officer Lavin's initial, albeit mistaken, belief that the vehicle description matched defendant's vehicle, there was no reason for Officer Lavin to continue scrutinizing the details of the vehicle. Finally, Officer Lavin's mistaken belief that defendant's vehicle was uninsured was corroborated when defendant was unable to provide proof of insurance, and it was an additional violation of Utah law. See Utah Code Ann. § 41-12a-303.2(2).

## CONCLUSION

Given the unique facts of this case, the court finds that Officer Lavin's factual mistake was not unreasonable. Accordingly, because Officer Lavin's stop of the defendant's vehicle was based on a reasonable and articulable suspicion of a traffic violation – operating an uninsured vehicle – the traffic stop did not violate the Fourth Amendment. Defendant's motion to suppress is DENIED.

Dated this 15th day of April, 2010.

_____
Dee Benson
United States District Judge